(No. 21521.—

The Rockford Savings and Loan Association, Appellant, vs. The City of Rockford, Appellee.

*Opinion filed April 22, 1933.*

SMITH, MENZIMER & SMITH, (LISLE W. MENZIMER, of counsel,) for appellant.

WILBUR E. JOHNSON, and DAVID D. MADDEN, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The plaintiff, the Rockford Savings and Loan Association, brought a suit against the city of Rockford before a justice of the peace to recover $14.15 which was paid by the plaintiff under protest in order to obtain a supply of water at a residence in Oxford street, in Rockford. The association acquired title to the property on December 16, 1930, and soon after leased it. The city water had been turned off before December 16, 1930, and the lessee, upon taking possession, was unable to obtain a supply of water because the water department refused to turn the water on until the bill for $14.15 for water furnished to the property in the quarter ending in October, 1930, had been paid. The plaintiff thereupon paid the bill under protest. The defense was based upon a city ordinance providing rules governing consumption of city water, section 21 of which was in the following words:

"Sec. 21. *Rates lien against property*—In addition to any other remedy provided herein for the enforcement or collection of any water rent or rate, all rates provided for in this ordinance shall be a lien against the premises to which any water may be supplied and a charge against the owner thereof, and such property owner of rented buildings in the

city of Rockford shall be responsible to the city of Rockford for all charges for city water used therein, or on or about the grounds adjacent thereto, in any action waged by the city in any court of competent jurisdiction for the amount of all such water rents or rates as may be due and unpaid, together with all penalties provided herein, and costs. Any change of ownership or occupancy shall not affect the application of this section."

The justice of the peace rendered judgment against the plaintiff. On appeal the circuit court rendered a like judgment, from which an appeal was allowed to this court, the circuit court having certified that the validity of a municipal ordinance was involved and that the public interest required a direct review of the cause by the Supreme Court.

Cities are of statutory creation and their powers are limited to those which are expressly granted by the General Assembly or are necessarily implied from such as are so granted. There is no statute which expressly grants authority to cities to declare rates for water to be a lien against the premises to which water has been supplied and a charge against the owner of such premises, and that the owner of rented buildings in the city shall be responsible for all charges for city water used in them or on or about the adjacent grounds. The sections of the statute which are applicable are section 3 of article 10 of the Cities and Villages act of 1872, (Cahill's Stat. 1931, par. 238, p. 385; Smith's Stat. 1931, par. 132, p. 369,) and section 4 of the act of 1873, authorizing cities, villages and incorporated towns to construct and maintain waterworks. (Cahill's Stat. 1931, par. 1065, p. 626; Smith's Stat. 1931, par. 430, p. 428.) These two sections are here set out:

"132. *Regulations—Rates—Taxation.*] Sec. 3. The city council or board of trustees shall have power to make all needful rules and regulations concerning the use of water supplied by the waterworks of said city or village, and to do all acts and make such rules and regulations for the con-

struction, completion, management or control of the water-works, and for the levying and collecting of any water taxes, rates or assessments, as the said city council or board of trustees may deem necessary and expedient; and such water taxes, rents, rates or assessments may be levied or assessed upon any lot or parcel of ground, having a building or buildings thereon, which shall abut or join any street, avenue or alley in such city or village through which the distributing pipes of such waterworks (if any) of said city or village are or may be laid, which can be conveniently supplied with water from said pipes: Provided, [whether] the water shall be used on such lot or parcel of ground or not; and the same, when so levied or assessed, shall become a continuing lien or charge upon such lot or parcel of ground, building or buildings situated thereon, and such lien or charge may be collected or enforced in such manner as the city council may, by ordinance prescribe. And the corporate authorities may levy a general tax for the construction and maintenance of such waterworks, and appropriate money therefor."

"430. *Rules—Tax—Water rents—Lien.*] Sec. 4. The common council of such cities, or trustees of such towns or villages, shall have power to make and enforce all needful rules and regulations in the erection, construction and management of such waterworks, and for the use of water supplied by the same. And such cities, towns and villages shall have the right and power to tax, assess and collect from the inhabitants thereof such tax, rent or rates for the use and benefit of water used or supplied to them by such waterworks, as the common council or board of trustees, as the case may be, shall deem just and expedient. And all such water taxes, rates or rents shall be a lien upon the premises and real estate upon or for which the same is used or supplied. And such taxes, rents or rates shall be paid and collected, and such lien enforced, in such manner as the common council shall, by ordinance, direct and provide."

These sections are substantially identical so far as the authority to fix and collect rates for the use of water furnished by the city is concerned. The provisions of the two sections in regard to the lien differ somewhat. Each section uses the words "water taxes," "rates," "rents" and "assessments" indiscriminately and inaccurately in reference to the charge made for the use and benefit of the water furnished by the city through its waterworks, but it has been clearly established that the liability for the use of water furnished by the city is in no sense a tax but is contractual, only, and that the words mentioned in the sections of the statute cited refer only to water takers and to rents and rates and not to a tax. (*Village of Lemont* v. *Jenks,* 197 Ill. 363.) In *Wagner* v. *City of Rock Island,* 146 Ill. 139, it was held that the business of furnishing the inhabitants of a city with water brought from a permanent source by means of waterworks and distributed through pipes to the residences and places of business of those desiring to obtain their water supply in that manner is not an exercise of governmental functions. A city, however, may be expressly authorized to supply its inhabitants with water or gas, charging them therefor and thereby making a profit. In doing so the city acts in its capacity of a private corporation and not in the exercise of its power of local sovereignty. The water rates in question in that case were held not to be taxes, and the distinction was made between taxes as an enforced proportional contribution levied by the State by virtue of its sovereignty for the support of government, and rates imposed and collected merely as compensation for water furnished by the city, to be paid by those who choose to receive and use the water. No one was compelled to receive, use or pay for the water except at his own election, but when he did receive and use it with knowledge of the rates charged, he agreed, by implication, to pay those rates, and his obligation rested upon contract and not upon the State's taxing power. Section 3 of article 10 of the Cities

and Villages act, therefore, is invalid in so far as it attempts to impose a lien, because it attempts to authorize the levy or assessment of water taxes, rents, rates or assessments upon real estate having a building or buildings thereon without regard to the use of water on such real estate. Such a lien, under the cases cited, cannot be sustained either as a general tax or a special assessment, and it cannot be sustained as a lien for the use of water, for the lien is declared without regard to the use of water.

Section 4 of the act of 1873 authorizes the city council to make rules for the use of water supplied by the waterworks and to collect from the inhabitants such rates for the water used by them as the council shall deem just and expedient. It also provides that water taxes, rates or rent shall be a lien upon the premises upon which the water was used or supplied, the lien to be enforced in such manner as the council shall provide by ordinance. The ordinance which the council passed, supposedly intending to conform to section 4, by section 21 repeated substantially the declaration of the statute that the water rates provided by the ordinance should be a lien upon the premises to which the water may be supplied. This part of the ordinance was unnecessary and ineffective, because the statute conferred no authority on the city to establish any lien but declared the lien itself. The ordinance continued with language intended to impose a personal charge on the owner of the property without regard to his knowledge that the water was used or supplied, and this the statute did not purport to authorize. The last sentence of section 21 is of no effect. The lien of the water rates is declared by the legislature. The city was without power to extend the lien, and its effect is a question for judicial construction.

The ordinance of the city of Rockford did not create any lien upon the property involved in this case because no statute conferred authority on the city to create a lien. However, section 4 of the act of 1873 did create a lien

on the premises upon or for which the water was used or supplied. It cannot be disputed that the General Assembly may declare rates for the use of water furnished by a city through its waterworks, or by a corporation organized for the purpose, to be a lien on the premises upon which the water is used or supplied, as a means of enabling the city or the company furnishing the water on such premises to secure the collection of its charges, on the ground that the furnishing of the water is essential to the health and safety of the community and that such a lien will be of help as an adequate remedy for the collection of the rates, and so will aid in providing an adequate supply of water at reasonable rates. The principle is the same as that upon which mechanics' liens, innkeepers' liens, liens for labor, skill, materials or storage furnished for or upon any chattels, and liens of owners of threshing machines, clover-hullers, corn-shellers or hay-balers upon grain threshed, clover hulled, corn shelled and hay or straw pressed, are sustained. Statutory liens which subject the private property of one person to a burden, restriction or obligation in favor of another person or the public have for their foundation the principle that private property is subject to such regulation by the exercise of the police power as may be necessary to the health, safety, comfort and well being of the community. (*Provident Institution* v. *Jersey City,* 113 U. S. 506; *Dunbar* v. *New York,* 251 id. 516; *Turner* v. *Revere Water Co.* 171 Mass. 329; *Loring* v. *Commissioners of Public Works,* 264 Mass. 460; *City of Atlanta* v. *Burton,* 90 Ga. 486; *Ford Motor Co.* v. *Kearney,* 91 N. J. L. 671; *State* v. *Water Supply Co.* 19 N. M. 27; *East Grand Forks* v. *Luck,* 97 Minn. 373; *Girard Life Ins. Co.* v. *Philadelphia,* 88 Pa. 393.) In none of the above cases were the facts exactly similar to the facts of this case. The plaintiff, which is the appellant here, was not the owner of the property at the time the water was supplied and used but is a subsequent purchaser. It was under no personal liability

for the arrears of the water rent. There is no evidence that it had any notice that water was used on the premises or that there was any default in the payment of water rent. It was charged, by the existence of the law, with knowledge that if there was a default the amount of the water rent was a lien on the premises. It was stipulated that the amount of the bill which the plaintiff paid was the usual and reasonable charge for the use of the water and was computed by the water department according to the terms of the ordinance.

The owner of real estate is under no obligation to furnish water to a tenant unless he has contracted to do so or a statute has imposed the obligation upon him. A tenant has a right to the use on the leased property of the water supplied to the leased property upon complying with the legal regulations of the water department. The landlord has no right to interfere with such use and is under no obligation to pay for the water. In this State, however, the statute has declared the water rates to be a lien on the property, which may be enforced in such manner as the common council may by ordinance direct and provide. The city, so far as appears from this record, has not exercised the power granted to it by the General Assembly to direct and provide the manner in which the lien for unpaid water rates shall be enforced. The plaintiff proved its acquisition of the property on December 16, 1930, that the water was turned off before that time, the request to turn on the water in March, 1931, and refusal, and the payment, under protest, of the delinquent bill of $14.15. The defense offered consisted of sections 1, 3, 4 and 21 of chapter 75 of the revised ordinances of the city. Sections 1, 3 and 4 placed the management and supervision of the waterworks in the hands of the superintendent of the water department, stated his duties, and provided that consumers of city water should be governed by and subject to "the following rules and regulations," which it was made the duty of the superin-

tendent to enforce. No rules or regulations followed. Section 21 has already been shown. Neither the lien of the water rates, the manner of its enforcement, the circumstances, times nor conditions under which the superintendent or any other officer or employee was authorized to turn on or turn off water, was mentioned. The plaintiff was not the owner when the water rents accrued and was not personally liable for their payment but was a subsequent purchaser without notice of the delinquency.

The statute gave a lien for water rent but did not direct the manner of its enforcement. That was left to the discretion of the city council to direct and provide, and the manner of its direction and provision was to be by ordinance. It was not left to the discretion of the mayor, the superintendent of waterworks or any other officer of the city. The General Assembly named the common council as the body which was authorized to direct and provide, and the method in which the direction and provision should be made was by ordinance. The council was not required to pass any ordinance, but so long as it did not, no other body or officer could enforce the lien. It is the rule in this State in cases of liens created by statute, where the act makes no provision for the enforcement of the lien, that it is to be enforced in a court of equity. (*Mammina* v. *Alexander Auto Service Co.* 333 Ill. 158; *Standidge* v. *Chicago Railways Co.* 254 id. 524; *West Chicago Park Comrs.* v. *Western Granite Co.* 200 id. 527; *Knapp, Stout & Co.* v. *McCaffrey,* 178 id. 107; *Cairo and Vincennes Railroad Co.* v. *Fackney,* 78 id. 116.) Having given to the council authority to act, and having declared the manner in which the power to act should be exercised, by a well known rule of construction the statute excluded the power of every other body. Until the council chose to act there was no method of enforcing the lien. The General Assembly created the lien but gave the council discretion in regard to the manner of its en-

forcement. If the council did not choose to exercise the power no other body or person could do so.

The case is very similar in its facts to that of *City of Chicago* v. *Northwestern Life Ins. Co.* 218 Ill. 40. The insurance company in that case had acquired several pieces of property in Chicago by the foreclosure of mortgages, upon each of which were unpaid bills for water supplied, which the city presented for payment. The company tendered the amount due for water furnished after its acquisition of each piece of property but refused to pay the bills prior to such acquisition. The city refused to accept the tender, threatened to shut off the water if the bills for the delinquent water rates were not paid, and in some cases did shut off the water. Thereupon the company paid the bills under protest, as the plaintiff did in this case, and brought suit to recover the amounts of the water bills which were in arrears before it acquired the title. It was held that a purchaser of property who pays under protest back water rates unlawfully exacted, to prevent the shutting off from the property of the water supply, may recover the amount paid, with interest. It is said in the opinion that it was not claimed that the city had any lien for the delinquent rates, but the case is authority that the payment was not voluntary but under protest and could be recovered in an action at law.

Section 21 of the ordinance in question is invalid, and the judgment of the circuit court should have been for the plaintiff and not for the defendant.

The judgment of the circuit court is therefore reversed and the cause is remanded, with directions to enter judgment for the plaintiff against the defendant.

*Reversed and remanded, with directions.*