**COHN, Plaintiff, v. CELEBREZZE et, Defendants.**

Common Pleas Court, Cuyahoga County.

No. 685319.   Decided December 8, 1958.

Danaceau, Cohn & Brown, Cleveland, for plaintiff.

Ralph S. Locher, Director of Law, Joseph H. Crowley, Chief Counsel, Andrew R. Sarisky, John J. Prince, Assts. Director of Law, Cleveland, for defendants.

## OPINION

By COHEN, J.

Laura G. Cohn, the plaintiff in this case, instituted this suit and asks for an order enjoining the City of Cleveland and certain officials thereof from refusing to supply her business premises located at 3901 Superior Avenue, Cleveland, Ohio, with water.

The plaintiff acquired title to the premises here in question on March 13, 1956. They were transferred to her pursuant to a journal entry in case No. 662,448 by reason of a sheriff's sale in foreclosure. The land is Torrenized and a Torrens certificate of title was confirmed in the plaintiff on that same day. There is no allegation that there is any notation thereon showing any claim by the City of Cleveland for any delinquency in the water or sewer rental. In fact, one of the stipulations is:—

"1. From the date of the first delinquency due in connection with the stipulated bill concerned with herein, the Director of Utilities of the City of Cleveland did not certify such delinquencies to the Director of Finance of the City of Cleveland, nor did the Director of Finance certify such delinquencies to the Auditor of Cuyahoga County."

On December 3, 1954 the City shut off the water supply to the premises. After acquiring title to them, the plaintiff obtained a permit for the use of water for building purposes. The City then stopped the water supply to said premises because of the nonpayment of the water bill by the former owners and are now supplying water only because of the issuance of a temporary mandatory injunction issued by this court.

The water bill here in question amounts to some $1,378.67 and accrued during the period from March 1st, 1952 to December 15, 1954. It is partially for water and partially for sewer rental. Actually during that period the total water and sewer bill amounted to some $4,200.00 but partial payments were made from time to time by the former owner during his occupancy.

When the City shut off the water supply in 1954 it chose one of several remedies to enforce collection of the past due account, see **Gatton v. City of Mansfield, 67 Oh Ap 210.** Another method it could have used would have been to enforce its right against the defendant by means of a lien filed against his real estate, see **City of Bucyrus v. Sears, 34 Oh Ap 450, 171 N. E. 256.**

The question presented here is whether or not the remedy selected by the City is enforcible against this plaintiff. For the reasons set out below this Court has concluded that it is not.

Both parties have submitted excellent briefs and the Court has taken some time to study them and the cases cited therein. From a reading of the briefs and a study of the law involved, this Court has been unable to find any case directly in point. And because of the fact pattern here (i. e. water cut off, sheriff's sale, Torrenized certificate), this Court feels that the cases previously decided are all distinguishable from the instant case. Many courts have recognized that in water rate cases the fact pattern often causes the legal result to

differ, for an example of this see Quick v. The District of Columbia, 90 A. 2d, 235 at page 236.

The City primarily relies on three of its ordinances, namely, 7.2709, 7.2116 and 7.2117. Under 7.2109 the penalty provided for nonpayment of a water bill is that the water shall be turned off until all charges due and payable have been paid. The ordinance continues:—

"The provisions of this section shall apply whether or not there has been in the meantime a change of ownership or possession of the premises supplied, except in cases of bankruptcy or foreclosure proceedings as set forth in Secs. 7.2116 and 7.2117."

The provisions in Sections 7.2116 and 7.2117 state that should the plaintiff or a cross petitioner in a foreclosure action notify the director of the water department of the pendency of the action, then the purchaser will be entitled to have water furnished the premises without payment of the water bills accrued by the previous owner, but only "for any period subsequent to the date of the receipt of notice of the pendency of foreclosure proceedings by the Director."

In the case of Pfau v. Cincinnati, 142 Oh St 101, the Supreme Court of Ohio held that similar ordinances in Cincinnati were properly enacted under Sec. 4, Article 8, Ohio Constitution. The Court held "In the exercise of these powers a municipality may adopt an ordinance making an owner of real estate liable for all charges for service and water supplied by such municipality through connections installed or maintained on the premises of such owner." Thus we see that the Supreme Court has held that a property owner may be liable under authority of an ordinance for his tenant's water bill and the liability may be enforced through court action and/or a denial of water service to the property.

Although the rule under the Pfau case, supra, is contrary to that in some jurisdictions, see Provident Trust Co. of Philadelphia v. Judicial Building & Loan Association, 71 A. 287; Farrow v. Ward, 53 A. 2d, 46; Etheredge v. City of Norfolk, 148 Va. 795, 139 S. E. 508; 55 A. L. R. 781; Rockford Savings & Loan Association v. City of Rockford, 252 Ill. 348, 185 N. E. 623, it is followed in others, see Prudential Company of Minnesota, 277 N. W. 351; Commonwealth v. City of Philadelphia, 19 A. 136.

This Court does not think the legal principles or facts applied in the Pfau case, supra, are analogous to those in the instant case. Here the plaintiff is one protected by a Torrenized title; by §5309.28 R. C., which provides that the owner of Torrenized land holds title free from all encumbrances not filed of record; and in particular by Section B thereof, which must be read as provided that any taxing district in this state must levy any taxes for assessments against the land; and by §5309.34 R. C., which provides that the transferee of registered land need not take notice nor make inquiry of any lien, claim, demand or interest of any one who is not named in the certificate, or who has not filed as provided by Chapter 53; and by §5309.23 R. C., which provides that a decree of confirmation and registration shall be absolutely conclusive against all persons including the state or any political subdivision thereof.

The City contends that the plaintiff was not diligent in ascertaining the status and condition of the property in regard to various incidents of ownership and in particular, did not make any inquiry of any claim of the City regarding the water bill. Obviously §5309.34 R. C., states that she need not make such inquiry and the city by ordinance may not raise itself by its own bootstraps. In addition, the dilatoriness of the City in failing to collect their bill and to permit the bill to accumulate without enforcing reasonable regulations and employing ordinary business precautions should not be cast upon the new owner, who did not contract the bill or use the water and therefore, should not be required to pay for it, Bellevue Borough v. Ohio Valley Water Company, 245 Pa. 114.

The Court recognizes that the City is faced with the problem of having many small accounts, but it must be remembered that the general public has no choice but to use the services offered by the City.

The contention of the City that it must always have an absolute right to payment in every instance and for all water supplied is contradicted by all the cases and texts. The City runs its water department in so far as the general public is concerned as a proprietary business and not as a governmental function, McQuillen v. Municipal Corporations, Vol. 8, No. 53.103 and Etheredge v. City of Norfolk, supra, and Rockford Savings & Loan Association v. City of Rockford, supra.

In coming to its decision in this matter, the Court is well aware of the four annotations on this subject found at 13 A. L. R. 346, 28 A. L. R. 472, 55 A. L. R. 789 and 26 A. L. R. (2d), 1359 and has read many of the cases cited therein. It recognizes the general rule is:

"The right of a municipal corporation or water company to compel a property owner to pay for water furnished to a former owner seems to depend on the existence of a lien against the property. In the absence of such an agreement, the water company is not allowed to enforce the contract obligation of one person against another who has not in any way assumed it, except where the water is actually turned off at the time of the purchase, so that the new owner may obtain an adjustment of the equities before he pays the purchase price for the property.

"So, a municipal corporation cannot, without statutory authority, compel the purchaser of property to pay rent for water consumed by his vendor, as a condition to furnishing his building a supply from its water system." (See 13 A. L. R. 349.)

Further it recognizes the claimed exception:

"If, however, the water has actually been turned off for default of the land owner, a successor in title cannot require it to be turned on again without the settlement of the arrearages, it being held that his remedy is against his grantor for indemnity for the amount due." (See 13 A. L. R. 350-351.)

Many of the cases under this claimed exception are not in point and the Court was unable to find in any of these cases any discussion of the constitutional limitations and in fact in the one case closest on point the Court said that counsel for the complainant did not in any way attack the constitutionality of the legislation, see Hoe v. City of

Orange, 70 N. J. Eq. 648, 62 A. 2d, 777. In the instant case the claimant does attack the constitutionality of the ordinances as applied.

Many of the cases dealing with land purchased at a sheriff's sale seem to arise in Pennsylvania. The first of the series of cases is the case of Girard Life Insurance Company v. City of Philadelphia, 88 Penn. 393, there the court held that the payments of all the arrearage due on the water bill would be collected before the rights acquired at the sheriff's sale could be enforced by the purchaser. After this holding there seems to be a deviation in theory and in Beaver Valley Water Company v. Public Service Commission, 70 Penn. Sup. Ct., 621, the Court held that public utilities could adopt reasonable regulations, but that "the rule of a water company requiring arrearages of water rents for service to the former owner to be paid by the successor of title as a condition precedent to service, is an unreasonable rule." The same thinking was followed in the case of Tyrone Gas & Water Company v. The Public Service Commission, 77 Penn. Sup. Ct. 292. It, therefore, appears that in Pennsylvania even though the fact pattern remained the same, namely, in a purchase at sheriff's sale, there has been a change in the legal conclusion as the earlier cases found reasonable the requirement that the water bill of the former owner be paid while later the courts held that a determination by the Public Utilities Commission that such a requirement was unreasonable was a valid determination.

One of the latest cases on this subject is Higley v. City of Sacramento, 149 F. Sup. 118. This case is of particular interest because there, as here, the municipality was under "home rule." Even so the court followed the theory in the case of Etheredge v. City of Norfolk, supra, and held:

"In order to justify making owner of real property liable for unpaid water bills of former owner, unpaid water charges must be considered by some theory to be a lien on real property, thereby causing obligation to follow ownership of land."

In addition to the above authorities, there is the article on "Methods Of Enforcing Payment Of Water And Sewage Charges" in 12 O. S. L. J. 256, wherein the author gives a scholarly analysis of the problem. Under Paragraph E, page 258 the author discusses the personal liability of the owner of premises and finds that the burden of water charges may be constitutionally imposed upon the owner but he goes on at page 560 to say: "Past service to an independent user, such as a prior owner, or one's landlord or other tenant, is a very different matter." The author then quotes in part from Milville Improvement Company v. Milville Water Co., 92 N. J. Eq. 480, the pertinent portions thereof follow:

"* * * in the absence of legislation creating a lien on the real estate for water service or other legislation of like effect, no person can be denied service because of delinquency of a prior owner or tenant."

The author in the above article concludes that if there was a statutory lien for water service charges then a new owner or a purchaser at land sale, etc., will be liable for the water charges, but if there is no lien provision then he will not. **And it should be recalled that in the Pfau**

case, supra, the Supreme Court held that a lien will not attach to property under authority of the type of ordinances here relied upon, see 9 O. S. L. J. 154.

Municipalities under the home rule provisions have acquired considerable power and there is no doubt under the Pfau case, supra, that in Ohio the municipality may impose upon the property owner the liability to pay the tenant's water bill, but this court is of the opinion that the ordinances sought to be enforced in this case as against a new owner of Torrenized land are not constitutional and further, that they are contrary to the registration of land titles under Chapter 53 R. C., and therefore, orders that a permanent mandatory injunction should issue requiring the City of Cleveland to provide water service for the new owner of the property so long as he pays any service charges incurred either by himself or by his tenants during his ownership.

The plaintiff is directed to draw a journal entry in conformity with the above. O. S. J.